Feliciano Acevedo, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
Mediante el presente recurso la señora Katherine Angueira Navarro (Angueira) solicita la revisión de una resolución final emitida por la Junta de Libertad Bajo Palabra (la Junta), la cual le concede el privilegio de libertad bajo palabra al señor Agapito Pérez Cruz, quien resultó convicto por la comisión de un delito grave contra la recurrente. En su recurso imputa a la Junta la comisión de los siguientes errores:
a) "Erró la Junta de Libertad Bajo Palabra al conceder el privilegio de libertad bajo palabra al convicto Agapito Pérez Cruz sin reconocer a la víctima del delito y peticionaria todos los derechos, prerrogativas y privilegios al amparo de la ley y los reglamentos aplicables, lo cual le privó de jurisdicción para actuar y por lo cual son nulas las decisiones recurridas."
b) "Erró la Junta de Libertad Bajo Palabra a.1 conceder el privilegio de libertad bajo palabra al convicto Agapito Pérez Cruz sin haber adoptado un reglamento al amparo de la Ley Núm. 90 del 27 de julió de 1995 que determinará sus procedimientos internos y salvaguardara los derechos a la víctima de delito y peticionaria."
c) "Erró la Junta de Libertad Bajo Palabra al denegar a la víctima de delito y peticionaria su solicitud de examen del expediente del convicto y la información obtenida en el curso de la evaluación de la solicitud de libertad bajo palabra del convicto Agapito Pérez Cruz, así como de los demás documentos solicitados, en violación de las leyes aplicables y del derecho constitucional de acceso a información gubernamental."
d) "Erró la Junta de Libertad Bajo Palabra al abusar de su discreción al conceder el privilegio de libertad bajo palabra al convicto Agapito Pérez Cruz."
Examinadas las comparecencias de las partes y el derecho aplicable, resolvemos expedir el auto para confirmar la resolución recurrida.
I
Surgen de los escritos de las partes y demás documentos que obran en el expediente los siguientes hechos. En el 1978, Angueira fue víctima de los delitos de secuestro, robo y violación. Por dichos delitos resultaron acusados y posteriormente convictos con penas de veinte (20) y sesenta (60) años respectivamente, los hermanos Ramón y Agapito Pérez Cruz, y asimismo su primo Jorge Luis Rivera Cruz. La Junta adquirió jurisdicción sobre el primero de dichos confinados, el 24 de mayo de 1988, fecha en que dicha parte cumplió el mínimo de la sentencia que le fuere impuesta.
*1088 Oportunamente y mientras se dilucidaban ciertos eventos relacionados a la otorgación del privilegio de libertad bajo palabra al confinado Ramón, la Junta adquirió jurisdicción sobre Agapito, el segundo de los confinados implicados en los delitos de los cuales Angueira fue víctima. Este último cumplió el mínimo de su sentencia el 20 de octubre de 1990.
El 7 de mayo de 1996, algunos meses después de haberse concedido el mencionado privilegio a Ramón y tras Angueira haber cuestionado dicha determinación, bajo los mismos fundamentos hasta ahora expuestos, ante el Tribunal de Circuito de Apelaciones, ésta fue notificada por el Programa de Comunidad de Caguas, actuando bajo instrucciones de la Junta, en tomo al inicio de una investigación para considerar entonces la liberación de Agapito. Poco después, el día 14 de mayo, Angueira fue notificada de su derecho a expresarse por escrito respecto a lo anterior. Esto último en virtud de la Ley 118 de 22 de julio de 1974, según enmendada por la Ley Número 90 de 27 de julio de 1995, 4 L.P.R.A. see. 1503, et seq. En la misma no se indicaba fecha, hora, ni lugar de la celebración de la vista. Tampoco fue informada sobre derecho alguno a comparecer personalmente a la misma.
En oposición a lo anterior, el 24 de mayo de 1996, Angueira escribió y solicitó a la Junta una vista pública, sin presencia del confinado, para expresar personalmente su posición. También requirió acceso al expediente completo y a cualquier otra información en poder del Estado relacionada a Agapito y a los demás convictos relacionados a su caso, a los fines de poder prepararse adecuadamente para dicha vista. Angueira también reclamó su alegado derecho a comparecer durante todo el trámite a llevarse a cabo por la Junta en vías de determinar la negación o concesión de libertad bajo palabra a Agapito. Fundamentó su reclamo en ciertas enmiendas realizadas por la Ley 90 y por el "Victims Rights and Restitution Act of 1990". 42 U.S.C. 10606; sec. 506. Finalmente requirió que se le supliera copia del reglamento diseñado para implantar uniformemente la participación de la víctima en dicho trámite. 
El 14 de julio de 1997, la Junta expidió una primera notificación en cuanto a una próxima reconsideración del caso de Agapito y limitó así a Angueira una vez más a que emitiera su opinión por escrito. Un mes después, el 18 de agosto, Angueira dirigió una misiva al entonces presidente de la Junta, señor Enrique García, reiterando su alegado derecho a comparecer y ofrecer su opinión personalmente en una vista pública sin la presencia del confinado. A estos efectos solicitó una vez más acceso al expediente completo de éste y de la demás información relacionada en poder del Estado. Igualmente replanteó su alegado derecho a participar durante el resto de los procedimientos a ser llevados a cabo por la Junta.
Así las cosas, el 28 de agosto de 1997, la Junta citó a Angueira para que compareciera por escrito o a que en la alternativa presentara su testimonio durante una vista a celebrarse el 23 de septiembre. Un día antes, el 22 de septiembre, se expidió una segunda notificación y citación para que compareciera a una vista a celebrarse el 14 de octubre del mismo año. Llegado el día de la vista y según surge de la correspondiente transcripción, Angueira compareció y se negó una vez más a opinar sobre la posible liberación hasta tanto pudiera informarse de la totalidad del contenido del expediente de Agapito. Esto último le fue denegado de manera consistente por la Junta por tratarse de un material alegadamente confidencial.
En cuanto a su alegado derecho a estar presente en el resto del procedimiento nada se le notificó al respecto.
Finalmente, el 26 de noviembre de 1997, la Junta expidió una carta notificándole a Angueira su determinación final de concederle el privilegio de libertad bajo palabra a Agapito. No se incluyó con dicha misiva ninguna resolución. Así las cosas, el 24 de diciembre de 1997, Angueira recurrió de la referida decisión. Tras habérsele concedido una prórroga para comparecer a la Junta, dicho organismo presentó su escrito en oposición. Nos encontramos entonces en posición de resolver.
II
La Ley Número 118 de 22 de julio de 1994, 4 L.P.R.A. sec. 1503, (Ley 118), creó la Junta de Libertad Bajo Palabra y le concedió poder para decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico. Posteriormente, dicho estatuto fue enmendado por la Ley Número 90 de 27 de julio de 1995 (Ley 90) estableciendo en su Artículo 1 que *1089 en aquellos procedimientos que se celebraran para conceder o modificar el privilegio de libertad bajo palabra, se le garantizarían a la víctima del delito por el cual fue convicto el liberado o la persona recluida, los siguientes derechos, entre otros: 

"(1) Comparecer, ya sea oralmente o por escrito, para presentar ante la Junta su opinión sobre:

(a) La determinación que en un momento deba tomarse con beneficio al privilegio, y

(b) el impacto económico, emocional o físico que ha causado la comisión del delito sobre la víctima y su familia.

(2)...

(3)...".

Surge dé los hechos de autos que si bien intentó la Junta restringir inicialmente y de forma indebida el derecho que tenía Angueira de expresar personal y verbalmente su posición en tomo a la concesión del privilegio de libertad bajo palabra al confinado Agapito y en cuanto al impacto económico, emocional y físico que la experiencia del delito había provocado sobre ella, lo cierto es que dicho proceder se vio subsanado por las notificaciones subsiguientes, mediante las cuales se le ofreció a ésta la ocasión para expresar su posición de manera verbal y personal.
No obstante, las oportunidades que rechazó Angueira en este sentido no pueden, sin embargo, verse justificadas por el hecho de que no se le permitió antes a ella el acceso al historial carcelario de Agapito y a los demás documentos relacionados que estuvieran en poder del Estado, para poder formar mejor su opinión en tomo a la posible liberación de éste. Esto último porque los mismos revestían un claro y expresamente estatuido carácter confidencial. En este sentido dispone la Ley 118 en su Artículo 7, como sigue:

"Toda la información obtenida por la Junta o por alguno de sus funcionarios en el desempeño de sus deberes oficiales será de carácter confidencial y no podrá ser divulgada revelando el nombre del confinado en forma alguna excepto para propósitos directamente relacionados con la administración de la justicia en casos criminales, o cuando, comprobado por la Junta que existe un interés legítimo en la información solicitada, medie el consentimiento voluntario y por escrito del confinado o liberado afectado por la divulgación o el de la persona que tenga al confinado o liberado bajo su custodia legal por estar éste incapacitado para otorgar tal consentimiento."

Es claro que la presente situación no encajaba en ninguna de las circunstancias excepcionales anteriormente citadas, por lo que Angueira no podía pretender ganar acceso a la información solicitada. Lo cierto es que las enmiendas y garantías incorporadas a la Ley Orgánica Núm. 118, mediante la Ley Núm. 90, a los fines de ampliar los derechos de las víctimas, nada incluyeron relativo a flexibilizar el acceso de información al historial del confinado. No se contempló enmendar las disposiciones de la Ley Número 118 y del Reglamento ya existente de la Junta en cuanto al carácter confidencial de la información que obra en sus expedientes.
Podemos entonces decir que no se privó a la parte recurrente de su derecho a manifestar su opinión. Lo que se hizo fue denegarle legítimamente el acceso a lo que era información privada y confidencial. Este último hecho no menoscaba el criterio de la víctima en cuanto a expresar su parecer con respecto al privilegio que solicita el confinado.
ni
De otra parte, Angueira alega que la Junta incidió al otorgar el privilegio de libertad bajo palabra, sin mediar la previa aprobación de un reglamento que gobernase los procedimientos internos al amparo de las enmiendas traídas por la Ley Número 90, y que salvaguardara los derechos de la víctima de delito. ,
No tiene tampoco razón en este punto.
*1090 Aunque reconocemos que la Junta tenía y tiene el deber de adoptar disposiciones reglamentarias para poner en vigor la Ley Núm. 90, no compartimos el criterio de que la ausencia de éstas haya viciado necesariamente sus actuaciones y procedimientos en el presente caso. Esto es así, particularmente si tomamos en cuenta que el Artículo 6 de la Ley 118 faculta a los miembros de la Junta y a los Examinadores que dicho cuerpo designe a tomar juramentos y recibir testimonios, datos o información o cualquier otra prueba pertinente a cualquier caso o asunto pendiente de determinación por parte de la propia Junta. Véase que la propia Ley 90 incorporó los parámetros que gobernarán las vistas de víctimas de delitos. Concluimos que la norma de ley y reglamentación vigente establece en forma clara el procedimiento necesario para recoger la opinión de las víctimas de delito, por lo que no era necesaria la aprobación de un reglamento particular en cuanto a dicho aspecto.
Como punto culminante a todo lo anterior, Angueira señala que la Junta abusó en el ejercicio de su discreción al conceder el privilegio de libertad bajo palabra al convicto Agapito. Tampoco podemos dar crédito a dicha contención.
Según hemos visto, dicho organismo le dio cumplimiento a los procedimientos requeridos por su ley orgánica. Notificó a Angueira y le dio varias veces la oportunidad de comparecer y expresar personalmente su posición en tomo a la concesión del privilegio. Es la Junta el organismo con el conocimiento especializado sobre la materia ante nuestra consideración y su función es la de evaluar los méritos del confinado para evaluar la concesión de un privilegio, o pasar nuevamente juicio sobre el delito cometido o cualquiera otra conducta delictiva que fuera adjudicada por el Tribunal competente. La Ley 118, según enmendada, le confiere la facultad exclusiva para evaluar todo el expediente y tomar la decisión final. Según hemos discutido anteriormente, la víctima del delito sólo aporta un aspecto de la información a ser considerada por la Junta. Las enmiendas incorporadas por la Ley Número 90 no transfirieron dicha facultad a la víctima, sólo pretendieron hacer que las agencias concernidas le garantizaran a las víctimas el derecho a ser oídas en los procedimientos posteriores.
La Junta cumplió con su deber de hacerle a Angueira conocer sobre el proceso y de darle la oportunidad de emitir su opinión antes de emitir su decisión en el caso. No obstante, la facultad de decidir no era de Angueira, como víctima, sino de la Junta, cuerpo administrativo creado y con el conocimiento especializado para dicho fin. No existe dentro del presente recurso prueba alguna de que la Junta carecía de jurisdicción para entender en el caso ni que medió error o arbitrariedad alguna dentro de su determinación.
Por los fundamentos antes expuestos, se confirma la resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General